John F. DODDS, Jr. and Patricia
G. Dodds, Appellees,

v.

PULTE HOME CORPORATION and
Pulte Home Corporation of the
Delaware Valley, Appellants.

Joseph and Amy Portale, Appellees,

v.

Pulte Home Corporation and Pulte
Home Corporation of the Dela-
ware Valley, Appellants.

Superior Court of Pennsylvania.

Argued June 20, 2006.

Filed Sept. 28, 2006.

Stephen M. Folger, Haddonfield, NJ, for appellants.

Nicholas Poduslenki, Philadelphia, for appellees.

BEFORE: KLEIN, GANTMAN, JJ. and McEWEN, P.J.E.

OPINION BY KLEIN, J.:

¶ 1 This consolidated appeal arises out of two separate actions instituted by homebuyers against the builders and sellers of their homes. John F. and Patricia Dodds and Joseph and Amy Portale (collectively "Plaintiffs") filed suit against Pulte Home Corporation of the Delaware Valley ("PHCDV"), and its alleged parent corporation, Pulte Home Corporation ("PHC") (collectively "Defendants"). PHC appeals from the trial court order denying Defendants' Motion for Summary Judgment that requested the matter be remanded to arbitration. Defendants claim the trial court erred in holding that the addition of fraud charges and the addition of the parent corporation, PHC, takes the matter out of the ambit of arbitration. We agree with Defendants and reverse and remand for the matter to be sent to arbitration.

¶ 2 The arbitration agreements between the parties are at issue in each case. In addition to breach of contract claims against PHCDV, Plaintiffs alleged claims of common law fraud, fraudulent inducement to enter the original purchase agreement, and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201–1 *et seq.* Plaintiffs do not allege fraud *in the procurement of the arbitration agreement;* rather, they assert that Defendants made fraudulent representations about the quality of the homes that were to be built. They also assert that Defendants falsely represented that they exceed normal customer satisfaction when, in fact, they have a pattern of failing to correct defects pursuant to the agreement of sale.[1]

¶ 3 Defendants filed preliminary objections, claiming that Plaintiffs' addition of the fraud and UTPCPL claims and the joinder of PHCDV's alleged "principal" were merely attempts to remove this case from the parameters of the arbitration clauses. The trial court agreed with Plaintiffs and denied Defendants' requests to compel arbitration.

¶ 4 The matter is controlled by this Court's decision in *Shadduck v. Christopher J. Kaclik, Inc.,* 713 A.2d 635 (Pa.Super.1998). Therefore, we reverse and remand for arbitration.[2] The parties to an agreement cannot attempt to defeat an arbitration clause simply by adding fraud allegations to what is essentially a contract claim or by adding a principal as a defendant who was not a party to the agreement. The gist of these actions is in contract, and, therefore, we conclude that the parties are bound by their arbitration agreements.

**1. Plaintiffs' claims of fraud and unfair trade practices do not take these matters out of the ambit of the arbitration agreements.**

¶ 5 The facts of this case are strikingly similar to those in *Shadduck, supra,* which controls our disposition. In *Shadduck,* the parties seeking to avoid arbitration argued that their claims of fraudulent misrepresentation and violations of the UTPCPL were distinct from their contract claims, and therefore were not subject to arbitration. 713 A.2d at 637. This argu-

ment was rejected as unsupported by the facts pled, and the same situation prevails here. Plaintiffs' underlying complaint is that the homes were not built well and proper repairs were not made. They also alleged that the builder knew it would not build the homes as promised and would not make the necessary repairs when asked.

¶ 6 The arbitration clause in this case is very broad, perhaps even broader than the clause in *Shadduck.* The clause in the instant case reads:

> **Any controversy, claim or dispute arising out of or relating to this Agreement or purchase of the Home** (except for claims subject to the Limited Home Warranty) shall be settled by arbitration.

(Purchase Agmt. at ¶ 20 (emphasis added).) In *Shadduck,* the arbitration clause provided:

> All claims or disputes between the Contractor and the Owner arising out of, or relating to, this Contract or the breach thereof shall be decided by arbitration.

713 A.2d at 637. Here, Plaintiffs' fraud claims relate to the purchase itself, not merely to the contract, so even if not controlled by *Shadduck,* it would be covered by the contract language in this case. This Court found that the *Shadduck* language was an "unlimited arbitration clause." *Id.* at 638.

¶ 7 Just as the *Shadduck* Court held that there is no separate time period involved, there is no separate time period or facts in this case. All of the claims in-

---

1. The Portales also raise two separate issues that they claim take this litigation out of the ambit of arbitration. We will address these issues after our discussion of Plaintiffs' joint issues.

2. Our standard of review of an order denying a petition to compel arbitration is limited to

determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition. *D & H Distributing Co. v. Nat'l Union Fire Ins. Co.,* 817 A.2d 1164, 1165–66 (Pa.Super.2003).

volved here "relat[e] to [the] Agreement or purchase of the Home." (Purchase Agmt. at ¶ 20.) Thus, they are all subject to arbitration.

¶ 8 Moreover, Plaintiffs' reliance on *Nealy v. State Farm Mutual Auto. Insurance Co.*, 695 A.2d 790 (Pa.Super.1997), is misplaced. The *Nealy* Court held that due to the unique nature of bad faith claims under 42 Pa.C.S.A. § 8371, original jurisdiction over such claims lies exclusively in the courts of common pleas. The Court noted that the plaintiffs' bad faith claims were temporally and factually distinct from the underlying contract claims that were subject to arbitration. *Id.* at 792. *Nealy* was also relied upon by the parties seeking to avoid arbitration in *Shadduck.* The *Shadduck* Court distinguished *Nealy* on its facts, and we can do the same here. As noted, the "bad faith" clause of section 8371 is unique. The obligation to pay under an insurance contract is distinct in time and facts from the actions of the insurance company *after* the incident giving rise to the claim. Here, all of Defendants' representations to obtain the contracts to sell the homes happened *before* the signing of the contracts that were allegedly breached.

¶ 9 The ruling in *Shadduck* also comports with logic and common sense. It is hornbook law that Pennsylvania favors the enforceability of agreements to arbitrate. *See Quiles v. Financial Exch. Co.*, 879 A.2d 281, 285 (Pa.Super.2005). If a party dissatisfied with the result of a contract could avoid arbitration merely by claiming that the other party intended to breach the contract before signing it, then any arbitration clause could easily be avoided. We agree with the reasoning of *Shadduck* and are bound by it. *See also Pittsburgh Logistics Sys., Inc. v. Prof'l Transp. & Logistics, Inc.*, 803 A.2d 776 (Pa.Super.2002) (applying *Shadduck* and

holding that plaintiff's tort claims arose from underlying contract and were therefore encompassed by arbitration clause).

**2. Plaintiffs' joinder of PHC as a defendant does not take this case out of the ambit of the arbitration agreement.**

¶ 10 Plaintiffs argue that because they also asserted a fraud claim against PHC, the alleged parent of PHCDV, *Plaintiffs* are not bound by the terms of the arbitration agreement. Defendants argue that non-signatories to an arbitration agreement can enforce such an agreement when there is an obvious and close nexus between the non-signatories and the contract or the contracting parties. We agree with Defendants.

¶ 11 Our Court has held that non-signatories to a contract, such as third-party beneficiaries, may fall within the scope of an arbitration clause if that is the signing parties' intent. *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1271 (Pa.Super.2004); *see Highmark Inc. v. Hospital Service Ass'n*, 785 A.2d 93 (Pa.Super.2001). In *Smay*, a construction company employee filed a complaint against the architect and the school district that had retained his company's services. The architect and the school district filed joinder complaints against the construction company, seeking indemnification under the contract that the school district had executed with the construction company. The contract contained an arbitration clause requiring that the parties arbitrate any controversy arising out of or relating to the contract. 864 A.2d at 1268–70. Because the architect was not a signatory to the construction contract, it claimed that it was not subject to the arbitration provision. *Id.* at 1271. This Court concluded that the architect's claim was indistinguishable from the school district's claim under the construc-

tion contract. Because both claims stemmed from the same incident and implicated identical legal principles, the architect's claim was also subject to the arbitration agreement. *Id.* at 1272.

¶ 12 Here, the interests of PHC are the same as those of PHCDV. An arbitration agreement would be of little value if a party could obviate the effect of the agreement merely by finding a way to join another party. In no event could the arbitration clause of PHCDV be defeated by adding PHC to the complaint, and because PHC wishes to *enforce* the arbitration agreement rather than avoid it, Plaintiffs, as signatories to the arbitration agreement, should not be able to avoid the requirement to arbitrate by a non-signatory when the non-signatory *wants* to arbitrate.

### 3. The Portales do not have a separate cause of action against Defendants under the contingent settlement agreement.

 ¶ 13 Following the purchase of their home, in February 2001, the Portales identified certain areas of work that PHCDV agreed to perform by way of compromise. Some were carried out and some were not. Some of the repairs claimed to be needed were covered by the agreement and others were not. Merely because the parties attempted to resolve the dispute does not mean that they abrogated the requirement to arbitrate if the settlement was unsatisfactory. Moreover, this argument was not separately pled and, therefore, is waived.

### 4. Defendants are not estopped from invoking the arbitration clause even though they previously sued the Portales in common pleas court under the same contract.

¶ 14 There is no "waiver" by Defendants because a prior lawsuit was filed against the Portales. If they wished, the Portales could have had that matter sent to arbitration, but they did not. Therefore, for that issue, the parties both agreed that the matter would be settled in court rather than by arbitration. That does not mean all issues forever should be tried in court. There is no showing that the lawsuit in any way prejudiced the Portales or otherwise affected the resolution of the instant dispute. Therefore, the general rule should apply and the test should only be whether there is a valid arbitration agreement and whether the dispute is within the scope of the agreement. *See Pittsburgh Logistics, supra; Highmark, supra.* As discussed above, we have concluded that it is.

¶ 15 Orders reversed. Cases remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.