**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2197
_____

T JASON NOYE,
individually and on behalf of all others similarly situated

v.

JOHNSON & JOHNSON SERVICES, INC.;
KELLY SERVICES, INC.

Johnson & Johnson Services, Inc.,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 1-15-cv-02382)
District Judge: Hon. Yvette Kane
_____

Argued March 21, 2019
_____

Before: SHWARTZ, KRAUSE, and BIBAS, Circuit Judges.

(Filed: April 4, 2019)
_____

OPINION*
_____

_____
    * This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Karla Gilbride [ARGUED]
Public Justice
1620 L Street, N.W., Suite 630
Washington, DC 20036

David A. Searles
John Soumilas
James A. Francis
Francis & Mailman
1600 Market Street, Suite 2510
Philadelphia, PA 19103

Megan Lovett
Community Justice Project
100 Fifth Avenue, Suite 900
Pittsburgh, PA 15222

Marielle R. Macher
Community Justice Project
118 Locust Street
Harrisburg, PA 17101

*Counsel for Appellee*

Todd S. Kim [ARGUED]
Reed Smith
1301 K Street, N.W., Suite 1000 – East Tower
Washington, DC 20005

Shannon E. McClure
Valerie Eifert Brown
Reed Smith
1717 Arch Street
Three Logan Square, Suite 3100
Philadelphia, PA 19103

Devin M. Misour
Reed Smith
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

Michael C. O'Neill
Reed Smith
10 South Wacker Drive, 40th Floor
Chicago, IL 60606

*Counsel for Appellant*

SHWARTZ, <u>Circuit Judge</u>.

Defendant Johnson & Johnson Services, Inc. ("J&J") appeals the District Court's order denying its motion to compel Plaintiff T Jason Noye to arbitrate his Fair Credit Reporting Act ("FCRA") claim. Under the doctrine of alternative equitable estoppel, J&J, who is not a signatory to an arbitration agreement with Noye, sought to bind him to arbitrate pursuant to an agreement he had with Defendant Kelly Services ("Kelly"). Because there is a close relationship between signatories Noye and Kelly, and non-signatory J&J, we will vacate the Court's order and remand for a determination of whether the claim is arbitrable.

I

Kelly, a temporary employment staffing company, provided recruitment and placement services for J&J. Noye submitted an application to Kelly for placement as an operations supervisor at J&J. Noye interviewed with J&J at Kelly's job fair and received an email offer from a Kelly recruiter with the subject line "Offer from J&J through Kelly Services." App. 121. Noye accepted.

As part of the hiring process, Kelly provides candidates for positions at J&J with: (1) initial hiring forms, such as a Dispute Resolution and Mutual Agreement to Binding

3

Arbitration Form ("Arbitration Agreement") and background screening forms, bearing

Kelly's logo; and (2) an Employment Agreement bearing J&J's logo ("Employment

Agreement"). Kelly provided Noye with these materials via an email bearing the subject

line "Kelly Services J[&]J [Hiring] Documents Please Print Sign and Return." App. 170

(capitalization omitted).

Noye signed all of the forms in the required sequence. He first signed the

Arbitration Agreement, which Kelly signed but which J&J did not.[1] Noye then signed

the Employment Agreement, which contained a signature line for the employer. The

Employment Agreement defined Kelly as the employer, Noye as the employee, and J&J

as the customer.[2] The Employment Agreement contained a provision entitled "Dispute

Resolution," concerning alternative dispute resolution ("ADR") programs Kelly's

customers may offer.[3]

---

[1] The Arbitration Agreement compels arbitration "for any 'Covered Claims' that arise between [Noye] and Kelly Services, [or] its related and affiliated companies." App. 83. No party contends that J&J is an affiliated company. "'Covered Claims' . . . include all common-law and statutory claims relating to [Noye's] employment." App. 83.

[2] Despite these contractual definitions, Noye believed J&J was his employer. J&J considered itself Kelly's customer.

[3] The dispute resolution provision states, in relevant part,

> When a Customer is willing to make its ADR program available . . . we will disclose the availability of the program to you . . . . Eligible disputes could include those between you and the Customer, between you and us, or between you and both the Customer and us. Your agreement commits you to use non-binding ADR methods . . . but it does not commit you to use any system, service, or process that is legally binding . . . (such as binding arbitration.)[.]

App. 92, 176.

4

After Noye completed the forms, "Kelly, on behalf of J&J, purchased a consumer report" for Noye's background screening. App. 46. Based on the report, Noye was informed that "J&J would not be hiring him." App. 46. Noye asserts that the report contained false and misleading information.

Noye filed a putative FCRA class action complaint against Kelly and J&J alleging, in Count I, that Kelly violated 15 U.S.C. § 1681b(b)(2) and, in Count II, that Kelly and J&J violated 15 U.S.C. § 1681b(b)(3)(A). Defendants moved to compel arbitration.

The District Court granted Kelly's motion to compel arbitration, Noye v. Johnson & Johnson, No. 1:15-cv-2382, 2017 WL 5135191, at *1 (M.D. Pa. Nov. 6, 2017), but denied J&J's motion, Noye v. Johnson & Johnson, 310 F. Supp. 3d 470, 472 (M.D. Pa. 2018). The Court concluded that, under either Pennsylvania law (the forum) or Michigan law (identified in the Arbitration Agreement's choice-of-law provision), non-signatory J&J could not compel Noye to arbitrate pursuant to equitable estoppel. Id. at 475. The Court recited a two-part conjunctive test it believed embodied Pennsylvania's equitable estoppel test, requiring proof (1) of an "obvious and close nexus between the non-signatories and the contract or the contracting parties," and (2) that the claims are "inextricably entwined with the [c]ontract." Id. at 475 (alteration in original) (citations omitted). Applying this test, the Court held that, "[e]ven if . . . a close relationship exists between J & J and Kelly . . . equitable estoppel would not apply" because Noye's claims

Noye did not recall receiving information from J&J about arbitration, and J&J stated that it had "no reason to have an arbitration agreement directly with Plaintiff because had Plaintiff been hired, he [would] have been an employee of Kelly, not [J&J]," App. 234.

5

"are not intimately founded in and intertwined with" the contract. Id. at 481 (internal quotation marks and citations omitted). J&J appeals.

## II[4]

### A

The Federal Arbitration Act "expresse[s] a strong federal policy in favor of resolving disputes through arbitration," placing agreements to arbitrate "on the same footing as other contracts." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009). Thus, a court may compel arbitration when a party entered such an agreement. E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 194 (3d Cir. 2001). This obligation does not "attach[] only to one who has personally signed the written arbitration provision." Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995) (citation omitted). Rather, a non-signatory may be bound to arbitrate "under traditional principles of contract and agency law," DuPont, 269 F.3d at 194 (citation omitted), including the state law doctrines of "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel," Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009) (internal quotation marks and citation omitted). In

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(1)(B).

"We exercise plenary review over the District Court's order on a motion to compel arbitration." Flintkote Co. v. Aviva PLC, 769 F.3d 215, 219 (3d Cir. 2014). "[A] motion to compel arbitration should only be granted if there is no genuine dispute as to any material fact and, after viewing facts and drawing inferences in favor of the non-moving party, the party moving to compel is entitled to judgment as a matter of law." White v. Sunoco, Inc., 870 F.3d 257, 262 (3d Cir. 2017) (citation omitted).

6

examining estoppel in the context of this case, we consider whether the applicable state law permits non-signatories to compel signatories to arbitrate under what is sometimes referred to as alternative equitable estoppel. See Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014) (recognizing, pursuant to Arthur Andersen, that "a contract may sometimes be equitably enforced by or against even nonparties"). Therefore, we must next identify the state law principles that govern alternative equitable estoppel.

B

Kelly's Arbitration Agreement states that Michigan law applies to all disputes arising under the contract. **App. 83.** No party, however, seeks to enforce this choice-of-law provision, and they have asserted that either Michigan or Pennsylvania law applies. The parties agree that both states embrace alternative equitable estoppel but disagree about whether the law of either state compels Noye to arbitrate with J&J. We will conduct a choice-of-law analysis to identify the applicable law. We apply the forum's choice-of-law principles. Gay v. CreditInform, 511 F.3d 369, 389 (3d Cir. 2007). The forum here is Pennsylvania. Under Pennsylvania's choice-of-law analysis, we first identify the laws of the relevant jurisdictions.[5] White v. Sunoco, Inc., 870 F.3d 257, 263 (3d Cir. 2017).

---

[5] Where the state's highest court has not addressed the issue, we must "predict how the Supreme Court of [the state] would decide the question." Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co., 609 F.3d 223, 237 (3d Cir. 2010). In doing so, we give "due regard, but not conclusive effect to decisions of the state's lower courts." Id. (internal quotation marks and citation omitted); see also White v. Sunoco, 870 F.3d 257, 264 (3d Cir. 2017) (indicating that in the absence of guidance from the state supreme court in question, we look to "decisions of intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that addressed the issue, as

7

Under Pennsylvania law, "non-signatories to an arbitration agreement can enforce such an agreement when there is an obvious and close nexus between the non-signatories and the contract or the contracting parties." Dodds v. Pulte Home Corp., 909 A.2d 348, 351 (Pa. Super. Ct. 2006); accord Saltzman v. Thomas Jefferson Univ. Hosps., Inc., 166 A.3d 465, 469 n.2 (Pa. Super. Ct. 2017); Provenzano v. Ohio Valley Gen. Hosp., 121 A.3d 1085, 1097 (Pa. Super. Ct. 2015); Elwyn v. DeLuca, 48 A.3d 457, 463 (Pa. Super. Ct. 2012); see also Caparra v. Maggiano's Inc., Civ. No. 14-05722, 2015 WL 5144030, at *8 (E.D. Pa. Sept. 1, 2015) (applying "obvious and close nexus" test). An obvious and close nexus may arise from "the relationship between a signatory . . . and a non-signatory," Provenzano, 121 A.3d at 1097, or the relationship between the non-signatory and the contract, Dodds, 909 A.2d at 351. When examining the nexus with the contract, some courts consider whether the claims at issue are "inextricably entwined with the [c]ontract,"[6] Elwyn, 48 A.3d at 463, or "stem[] from the same incident and implicate[]

_____

well as to analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand") (internal quotation marks and citation omitted)).

[6] In dicta, we appear to have elevated this consideration into a requirement, stating in White,

> The equitable estoppel rule in Pennsylvania is essentially the same as the test described in DuPont: "'non-signatories to an arbitration agreement can enforce such an agreement when there is an obvious and close nexus between the non-signatories and the contract or the contracting parties' . . . [and if] claims against [the non-signatory] are inextricably entwined with the Contract."

identical legal principles," Dodds, 909 A.2d at 352 (citing Smay v. E.R. Stuebner, Inc.,

864 A.2d 1266, 1272 (Pa. Super. Ct. 2004)). Finally, some Pennsylvania courts look at

the breadth of the relevant arbitration provision, such as whether the definition of "claim"

is restricted "to one arising between the parties" named in the contract. Elwyn, 48 A.3d

at 463 (citing Dodds, 909 A.2d at 350). Because Pennsylvania's intermediate appellate

courts have uniformly embraced Dodds's single factor test, we predict that the

Pennsylvania Supreme Court would too.[7]

2

Under Michigan law, a non-signatory to a contract may bind a signatory to

arbitrate pursuant to a theory of equitable estoppel

> (1) when the signatory to a written agreement containing an arbitration clause
> must rely on the terms of the written agreement in asserting its claims against
> a non-signatory; or (2) when the signatory raises allegations of substantially
> interdependent and concerted misconduct by both the non-signatory and one
> or more signatories to the contract.

---

870 F.3d at 263 n.5 (alterations in original) (quoting Elwyn, 48 A.3d at 463). We need
not accept White's equation of Pennsylvania's single-factor test with DuPont's two-part
conjunctive test. First, the statement in White appears in a footnote within an opinion
focused on Florida and South Dakota, not Pennsylvania, law and thus is dicta. Second,
the test outlined in DuPont relied on federal principles and pre-dated Arthur Andersen's
pronouncement that equitable estoppel should be governed by state law. See 556 U.S. at
631-32. Indeed, we recognized in White that "we did not adopt a rule regarding
alternative estoppel in DuPont. . . . In DuPont, we had no occasion to adopt or reject a
standard, but merely observed that other courts of appeals have employed an alternative
estoppel theory . . . ." 870 F.3d at 263 n.4. Third, Pennsylvania courts have not
described alternative equitable estoppel as having conjunctive elements. Therefore,
mindful of Arthur Andersen, we consider only intermediate Pennsylvania decisions in
this case to predict how the Pennsylvania Supreme Court would decide this issue.

    [7] The District Court therefore erred by applying the conjunctive test set forth in
DuPont and in not considering whether a close relationship exists between the non-
signatories and the contract or the contracting parties. See Noye, 310 F. Supp. 3d at 481-
82.

Tobel v. AXA Equitable Live Ins. Co., No. 298129, 2012 WL 555801, at \*11 (Mich. Ct.

App. Feb. 21, 2012) (quoting Brown v. Pac. Life Ins. Co., 462 F.3d 384, 398-99 (5th Cir.

2006)); see also Scodeller v. Compo, No. 332269, 2017 WL 2791452, at \*4 (Mich. Ct.

App. June 27, 2017) (per curiam); City of Detroit Police & Fire Ret. Sys. v. GSC CDO

Fund Ltd., No. 289185, 2010 WL 1875758, at \*6 (Mich. Ct. App. May 11, 2010) (per

curiam).[8] Given the uniform test the Michigan intermediate appellate courts have

embraced, we predict that the Michigan Supreme Court would adopt Tobel's disjunctive

test to analyze equitable estoppel.

C

Although Pennsylvania and Michigan articulate the test differently, they "produce

the same result on the particular issue presented."[9] White, 870 F.3d at 263 (internal

quotation marks and citation omitted).

1

Applying Pennsylvania law, alternative equitable estoppel may be invoked given

the "obvious and close nexus between" non-signatory J&J and "the contracting parties,"

Kelly and Noye. Dodds, 909 A.2d at 351. Kelly provides recruitment and placement

---

[8] While these Michigan cases are unpublished, and under Michigan Court Rules are non-binding precedent and should not be cited where there is "published authority," M.C.R. 7.215(C)(1), we may consider unpublished state court opinions as persuasive authority "when predicting state law," Taransky v. Sec'y of U.S. Dep't of Health & Human Servs., 760 F.3d 307, 317 n.9 (3d Cir. 2014).

[9] While not outcome determinative in this case, Judge Shwartz notes that Pennsylvania and Michigan law articulate different tests for alternative equitable estoppel, and a fuller choice of law analysis could be warranted. See, e.g., Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007).

services to J&J.  Noye interviewed for a placement with J&J at Kelly's job fair, and Noye received his offer to work at J&J through a Kelly recruiter in an email bearing the subject line "Offer from J&J through Kelly Services."  App. 121.  Kelly was authorized to use J&J logos and trademarks on employment forms it relayed to Noye, and Noye received information and documents related to the onboarding process from Kelly in an email with the subject line "Kelly Services J[&]J [Hiring] Documents . . . ."  App. 170 (capitalization omitted).  These documents, including the Arbitration and Employment Agreements and background check forms, were the vehicles to place Noye, a Kelly employee, with J&J.  These facts demonstrate a close nexus among Kelly, J&J, and Noye as to Noye's employment with Kelly and placement with J&J, and therefore support the application of alternative equitable estoppel.

Moreover, Noye's complaint often refers to Kelly and J&J collectively as "Defendants," and accuses them of the same conduct in Count II.  App. 54-55.  Thus, Noye's "claims against the Defendants are indistinguishable as they stem from the same incident and implicate identical legal principles," Caparra, 2015 WL 5144030, at *8, and make "the interests of [J&J] . . . the same as those of [Kelly]," Dodds, 909 A.2d at 352.  This also reflects a close nexus between J&J and Kelly.

2

Application of either prong of the Michigan test also supports applying alternative equitable estoppel.  First, Noye's FCRA claim resulted from his employment relationship and the Arbitration Agreement contemplates employment disputes.  Second, Noye alleges concerted and interdependent misconduct by J&J and Kelly, collectively accusing them

11

in Count II of failing to provide Noye with proper background check information.  See City of Detroit, 2010 WL 1875758, at *7 ("[A]ll claims in plaintiff's complaint against nonsignatories were also brought against . . . a party to the arbitration agreement, thereby further indicating that all claims against nonsignatories are based on 'substantially interdependent and concerted misconduct' . . . .").  Where Noye "fail[s] to allege tortious acts by [J&J] that are separate and apart from [Kelly's], we can only conclude that the complaint asserts concerted misconduct by all parties."  Tobel, 2012 WL 555801, at *11.

For these reasons, under either Pennsylvania or Michigan law, equitable estoppel applies.

## III

Concluding that a party may be equitably estopped from resisting arbitration does not itself answer the question of whether a dispute is arbitrable, which asks "whether the parties have submitted a particular dispute to arbitration."  Opalinski v. Robert Half Int'l, Inc., 761 F.3d 326, 331 (3d Cir. 2014) (citation omitted).  Courts typically determine questions of arbitrability, unless the parties have reserved the issue for an arbitrator.  Id. at 330.

The Arbitration Agreement compels arbitration for "'Covered Claims' that arise between [Noye] and Kelly Services, its related and affiliated companies . . . ."  App. 83.  The Agreement defines "Covered Claims" to "include all common-law and statutory claims relating to [Noye's] employment."  App. 83.  Thus, the Arbitration Agreement speaks of who is bound to arbitrate and what subjects are ripe for resolution by an

12

arbitrator.  We will leave to the District Court to decide whether Noye's FCRA claim against J&J is a dispute that is arbitrable under the Arbitration Agreement.[10]

IV

For the foregoing reasons, we will vacate the order denying J&J's motion to compel arbitration and remand.

---

[10] In doing so, the District Court may also consider whether the Employment Agreement, through which Kelly informed Noye that he would be obligated to participate in "non-binding ADR" with J&J had J&J offered such a process, App. 92, impacts the arbitrability of this claim against J&J under the Arbitration Agreement.