Robert F. NEALY and Marylin K. Nealy, Administrators of The Estate of Troy Robert Nealy, Deceased, Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and H. David Miller, Jr., Appellees.

Superior Court of Pennsylvania.

Argued April 15, 1997.

Filed May 8, 1997.

Reargument Denied July 18, 1997.

Richard C. Angino, Harrisburg, for appellant.

Robert E. Kelly, Jr., Harrisburg, for appellee.

Before CAVANAUGH, POPOVICH and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

On February 6, 1989, Troy Nealy, son of appellants Robert and Marylin Nealy, was killed in an automobile accident in Cumberland County. At the time of the accident, appellants were insured by two policies issued by appellee, State Farm Mutual Automobile Insurance Company. The policies provided general liability limits of $250,000 and $100,000, respectively. The underinsured motorist coverage for each policy, however, was limited to $25,000 due to signed waivers requesting such lower coverage pursuant to 75 Pa.C.S.A. § 1734.[1]

---

1. **§ 1734. Request for lower limits of coverage**
 A named insured may request in writing the issuance of coverage under section 1731 (relating to availability, scope, and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.
 75 Pa.C.S.A. § 1734.

Following State Farm's denial of the Nealys' requested benefits, the Nealys commenced suit in the Court of Common Pleas of Cumberland County against both State Farm and H. David Miller, Jr., the Nealys' State Farm representative. The Nealys alleged that the waivers signed pursuant to 75 Pa. C.S.A. § 1734 were invalid and that Miller was negligent in failing to obtain for them $250,000/$500,000 in stacked uninsured/underinsured motorist benefits.

Almost one year thereafter, on June 11, 1991, the Nealys moved to sever the claim against State Farm from that against Miller, asserting that the claim against State Farm fell within the mandatory arbitration provisions of their insurance policies. On October 9, 1991, the trial court granted the Nealys' request and ordered that the claim against State Farm proceed to arbitration pursuant to the Pennsylvania Uniform Arbitration Act, 42 Pa.C.S.A. § 7301 et seq.

Prior to the arbitration hearing, the Nealys identified four issues that would comprise their claim. These issues were: (1) the liability of the automobile driver, Benjamin Kutz; (2) the damages sustained due to Troy Nealy's death; (3) the limits of the underinsured motorist coverage available to respond to the damage claim; and (4) whether State Farm acted in bad faith in refusing to honor the Nealys' initial claim.

Following various pre-trial submissions, the arbiters agreed to entertain the first three claims outlined above. As to the fourth issue, alleging bad faith, the arbiters specifically ruled that they would not receive evidence or take testimony.

On August 9 and 10, 1994, the arbiters heard testimony, all of which related to liability and damages. An arbitration award was issued on January 16, 1995. The arbiters unanimously determined that the driver of the automobile, Benjamin Kutz, was liable for Troy Nealy's death. By a two-to-one margin, however, the arbiters further found that the underinsured motorist waiver forms signed by the Nealys were valid and enforceable. Thus, the policies provided for a sum total of $50,000 in benefits rather than the $350,000 as asserted by the Nealys. Finally, although the arbiters refused to hear evidence relative to the Nealys' bad faith claim, they unanimously ruled that, based upon the evidence presented, State Farm did not act in bad faith in defending against the Nealys' claim.

An application to vacate, modify and/or correct the arbitration award was then presented to the Court of Common Pleas of Cumberland County. Said application asserted, again, that the § 1734 waivers signed by the Nealys were invalid because they were not attached to the actual insurance policies as required by the Insurance Company Law of 1921. The Nealys claimed that the issue of whether the waiver needed to be appended in order to be enforceable presented an issue of first impression that should properly be addressed by a court and not a board of arbiters.

Nevertheless, because this identical issue had recently been litigated in this Court and was awaiting disposition on a petition for allocator in our Supreme Court, the parties agreed to delay the listing of their case pending our Supreme Court's review in Schultz v. Aetna Casualty and Surety Co., 443 Pa.Super. 659, 663 A.2d 166 (1995). In April of 1996, our Supreme Court denied the parties' petition for review in Schultz, and the present case was then listed for argument in the trial court.

On July 22, 1996, the trial court denied the Nealys' application, holding that the Schultz decision created binding precedent relative to the scope of review of arbitration awards and that the court was therefore without jurisdiction to review the substance of the Nealys' claims. This appeal follows.

■ Presently, appellants have reasserted their claim that this Court, and trial courts, are vested with the jurisdiction to review arbitration awards which involve issues of first impression. Consistency in the law mandates such a determination, appellants argue. Moreover, in addition to the need for uniformity, appellants maintain that public policy considerations necessitate appellate review of their claim. Indeed, appellants aver that nothing less than the "foundation of judicial precedence as an integral part of

Pennsylvania jurisprudence hangs in the balance." Appellants' brief at 17.

· After citing to a plethora of caselaw which, arguably, supports this broad proposition, appellants claim that the instant appeal presents such a situation because "[t]he issue of attachment has yet to be addressed by any court." Appellants' brief at 16. This, however, is simply not the case. Indeed, in light of the unique facts surrounding the present appeal, we are at a loss to understand how this averment can be made.

As stated, prior to argument in the lower court, the parties agreed to await the final disposition in *Schultz, supra,* wherein a panel of this Court held that, absent an allegation that a specific provision in an insurance policy contravenes public policy, courts lack the jurisdiction to review and/or disturb an arbitration award. Therefore, because appellants' argument, that unappended § 1734 waiver forms were unenforceable, asserted only a general, amorphous claim couched in public policy language, the arbiters' award was not reviewable by our courts.

> Although Appellants couched their claims to the trial court in terms of a "public policy" argument, they did not challenge a provision or term in their policy as being contrary to the public policy of this Commonwealth. Rather, Appellants sought to have the court reconsider the claims they made before the arbitration panel in which they argued that a signed waiver should not be enforced because the agent did not take steps to ensure that Appellants read and understood its terms before signing, and because the waiver was not attached to the policy eventually issued. It has never been claimed that the waiver or policy language itself was contrary to the public policy of this Commonwealth. For this reason the trial court correctly concluded that it did not have the liberty to disturb the arbitrator's ruling based upon the claims raised by Appellants.

*Schultz,* 443 Pa.Super. at 663–664, 663 A.2d at 169.

The instant appeal is factually and legally indistinguishable from *Schultz.* · It follows, therefore, that the disposition of the present case is controlled by the precedent estab-

lished in *Schultz* and that appellants' first issue on appeal is without merit. The trial court correctly applied the relevant legal principles to the facts of the present case and did not abuse its discretion in determining that it was without jurisdiction to review the arbiters' award.

 Next, we address appellants' claim that the trial court erred in holding that bad faith claims raised pursuant to 42 Pa.C.S.A. § 8371 must be litigated in the courts and not before arbitration panels. Further, appellants assert that the trial court erred in holding that the arbiters' disposition of the bad faith issue was gratuitous and, therefore, did not amount to an appealable order or decree from which an appeal may be taken.

As previously detailed, although appellants presented the arbiters with a bad faith claim, the panel determined that it was without jurisdiction to decide such an issue and, therefore, refused to allow presentation of testimony or evidence on the issue. Nonetheless, although reiterating its position that § 8371 claims cannot be presented at arbitration hearings, the arbiters' report commented upon whether they believed that State Farm acted in bad faith.

The Pennsylvania bad faith statute reads as follows:

**§ 8371. Actions on insurance policies**

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371.

In interpreting this statute, this Court has consistently held that claims brought thereunder are distinct from the underlying contractual insurance claims from which the dispute arose. *See, e.g., Romano v. Nationwide*

*Mutual Fire Insurance Co.*, 435 Pa.Super. 545, 549, 646 A.2d 1228, 1231 (1994); *March v. Paradise Mutual Insurance Co.*, 435 Pa.Super. 597, 599, 646 A.2d 1254, 1256 (1994). Rather, § 8371 provides an independent cause of action to an insured that is not dependant upon success on the merits, or trial at all, of the contract claim. *Id.*

While it is therefore settled law that an insured may pursue a bad faith claim premised upon § 8371 without regard to the status of a parallel contractual claim, it remains undecided whether the § 8371 claim may be decided by an arbitration panel or, instead, must be passed upon in the first instance by a court.[2]

Both this Court and our sister federal courts have decided a myriad of cases that impinge in some respect upon the workings of § 8371. No court, however, has squarely decided the question of whether an arbitration panel is vested with the jurisdiction to entertain such a claim. After careful consideration, we conclude that original jurisdiction to decide issues of § 8371 bad faith is vested in our trial courts.

Our research shows that, as a procedural norm, virtually all § 8371 claims have been commenced in our courts of common pleas without first being submitted to arbitration.[3] Although some of these cases remained in our state courts throughout litigation, a vast majority were removed to federal court upon motion by the defendants, evoking federal diversity jurisdiction. Although federal caselaw interpreting and applying Pennsylvania state law is not binding upon this Court, it remains a valuable source of judicial interpretation and should be carefully considered when deciding issues of first impression. *See, e.g., Pappas v. Asbel,* 450 Pa.Super. 162, 172, 675 A.2d 711, 716 (1996).

In *Winterberg v. Transportation Insurance Co.,* 72 F.3d 318 (1995), the Court of Appeals for the Third Circuit was called upon to determine the interplay between this state's workman's compensation statute and the bad faith provision embodied in § 8371. After a thorough and comprehensive review of the inner workings and intent of the worker's compensation scheme, the Court held that referees appointed to hear compensation claims "have **no authority** to hear actions brought under the 'bad faith' statute" and that "[t]he language of the statute plainly focuses on suits in courts of law based on insurance policies." *Id.* at 324 (emphasis added).

We find *Winterberg* to be both factually similar and legally persuasive. Although involving the jurisdiction of a workman's compensation board and not an arbitration panel, the Court correctly recognized that the jurisdiction granted to these types of non-judicial panels is limited in nature and should not be expanded merely because the events which gave rise to the initial cause of action may or must be initiated in a non-judicial or quasi-judicial forum.

Moreover, we find persuasive several well-reasoned federal decisions which have held that, because § 8371 authorizes the imposition of punitive damages, the seventh amendment to the federal constitution entitles a plaintiff to demand a jury trial in federal court. *See, e.g., Fahy v. Nationwide Mutual Fire Insurance Co.,* 885 F.Supp. 678 (M.D.Pa. 1995); *Younis Brothers & Co. v. Cigna Worldwide Insurance Co.,* 899 F.Supp. 1385 (E.D.Pa. 1995). This opportunity is obviously not available when claims are presented to arbitration panels.

Arbitration panels are designed to ease the burden on our courts by deciding issues of damages and liability as they pertain to the

**2.** It is curious that, while appellants expended exhaustive energy attempting to convince this Court that their first question on appeal presented an issue of first impression, they are silent with respect to this second issue which, in fact, presents such an issue.

**3.** Our research has disclosed one case, *Terletsky v. Prudential Property & Casualty Insurance Co.,* 437 Pa.Super. 108, 649 A.2d 680 (1994), in which a § 8371 claim was passed upon by a

board of arbiters. The Arbitration Award was appealed to the court of common pleas and, subsequently, to this Court. We note, however, that although appellants in *Terletsky* presented twelve issues to this Court for review, some of which questioned the propriety and amount of fees awarded pursuant to § 8371, the threshold jurisdictional issue was neither presented nor passed upon. We therefore do not find *Terletsky* controlling in the instant matter.

factual dispute that gave rise to the contractual insurance claim. A § 8371 bad faith claim, however, is initiated based upon behavior of the insurance company occurring subsequent to the negligent or intentional behavior of a third party that spawned the contractual suit. Thus, because the behavior complained of is temporally and factually distinct from any behavior that would impact upon the outcome of the damages and liability disposition of the contract claim, we see no reason to expand upon the panels' jurisdiction.

We therefore hold that the trial court in the instant matter properly concluded that the arbitration panel did not have jurisdiction to decide the § 8371 bad faith claim and that the arbiters' gratuitous comments to the effect that State Farm did not act in bad faith were merely *dicta*. Just as appellants were contractually required to initially litigate their insurance claims at the arbitration level, they were statutorily required to commence their bad faith claim against their insurer in the court of common pleas.[4]

Judgment affirmed.

---

4. Because of the caselaw previously detailed which holds that arbitration claims are separate and distinct from § 8371 claims, appellants' bad faith claim could have been brought contemporaneously with or subsequent to their contractual insurance claims.