Richard K. SHADDUCK, M.D. and Shirley R. Shadduck, Husband and Wife, Appellees,

v.

CHRISTOPHER J. KACLIK, INC., a Pennsylvania Corporation, Appellant.

Superior Court of Pennsylvania.

Argued March 4, 1998.

Filed May 20, 1998.

William K. Herrington, Pittsburgh, for appellant.

Wendelynne J. Newton, Pittsburgh, for appellee.

Before JOHNSON and HUDOCK, JJ., and CERCONE, President Judge Emeritus.

HUDOCK, Judge:

On June 29, 1994, Richard and Shirley Shadduck (Owners) entered into a building contract with Christopher J. Kaclik, Inc. (Builder) for the construction of a residence in Fox Chapel, Pennsylvania. Included in the contract was a provision which mandated that the parties submit all disputes and grievances arising out of the contract to the American Arbitration Association for final, binding arbitration.

On January 31, 1997, Owners initiated the instant action by filing a praecipe for a writ of summons in the Court of Common Pleas of Allegheny County. In their subsequently-filed complaint, Owners alleged that Builder made false representations regarding its ability, or willingness, to construct Owners' home in a workmanlike fashion. Owners also claimed that Builder engaged in unfair and deceptive trade practice before, during and after the construction of their house. Consequently, Owners' complaint included one count each of fraudulent misrepresentation and violation of the Unfair Trade Practices and Consumer Protection Law.

At about the same time, on February 3, 1997, Owners filed a demand for arbitration with the American Arbitration Association. Therein, Owners alleged that, due to its faulty construction of Owners' home, Builder had breached the terms of the parties' contract and warranty obligations.

On April 10, 1997, Builder filed preliminary objections to Owners' complaint in the nature of a motion to compel arbitration. In support of its motion, Builder argued that the parties' agreement contemplated arbitration of all disputes and claims, whether sounding in tort or contract. Builder, therefore, requested that the court dismiss Owners' complaint. In the alternative, Builder requested that the court stay the proceedings pending resolution of the ongoing arbitration dispute. Finally, asserting that Owners failed to state claims upon which relief could be granted, Builder filed a general demurrer to both tort counts.

By order dated May 15, 1997, the Honorable S. Louis Farino denied Builder's preliminary objections in their entirety and ordered Builder to file a responsive pleading within twenty days. On June 11, 1997, Builder complied with the court's order by filing an answer with new matter to Owners' complaint. On the following day, Builder filed the instant appeal from the court's order denying its preliminary objections.

At the outset, we must determine whether Builder's appeal is properly before our Court for review. As a general rule, an order denying a party's preliminary objections is interlocutory and, thus, not appealable as of right. See, e.g., Grimme Combustion, Inc. v. Mergentime Corp., 385 Pa.Super. 260, 560 A.2d 793 (1989). There exists, however, a narrow exception to this oft-stated rule for cases in which the appeal is taken from an order denying a petition to compel arbitration. See, e.g., Hazleton Area School Dist. v. Bosak, 671 A.2d 277, 281, n. 8 (Pa. Commw.1996); Hallo v. Flore, 386 Pa.Super. 178, 562 A.2d 856, 857 (1989).

We will, therefore, review the merits of that portion of the court's order denying

Builder's motion to compel arbitration. We note, however, that Builder's objections in the form of general demurrers to the tort counts in the underlying complaint are not ripe for this Court's review. *Grimme, supra.* Our discussion will, therefore, be limited to the arbitration issue.

In this regard, Builder argues that the arbitration agreement at issue was broadly worded and, by its plain language, contemplated that all disputes, whether styled in tort or contract language, be submitted to arbitration. Conversely, Owners aver that the parties' agreement to arbitrate was limited to causes of action sounding in contract and that they were permitted, therefore, to file the instant tort claims in the court of common pleas.

█ It is well-settled that the issue of whether a particular dispute falls within a contractual arbitration provision is a matter of law for the court to decide. *See, e.g., Wolf v. Baltimore,* 250 Pa.Super. 230, 378 A.2d 911 (1977). In so doing, the court must carefully review the contractual language and determine whether the disagreement falls within the provision's scope.

Since our holding will, therefore, hinge upon the wording of the parties' contract, we will reproduce the applicable provision in full:

### DISPUTES/ARBITRATION

10. In the event of any dispute between the Contractor and Owner, as to the meaning or interpretation of any of the provisions of this Contract **or any of the plans or specifications** or as to payment, the following rules apply:

A. The Contract shall be governed by the law of the place where the Lot is located.

B. **All claims or disputes between the Contractor and the Owner arising out of, or relating to, this Contract or the breach thereof shall be decided by arbitration** in accordance with the construction Industry Arbitration Rules of the American Arbitration Association. Notice of the demand for arbitration shall be filed in writing with the other party to this Contract and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with the applicable law in any Court having jurisdiction thereof.

C. The arbitrators shall be limited to interpretation of this Contract and exhibits and addenda hereto **and disputes arising out of this Contract and such exhibits and addenda.**

D. The agreement herein among the parties to this Contract and any other written agreement to arbitrate referred to herein shall be specifically enforceable under the prevailing arbitration law.

E. Each party shall pay for one-half of the costs of the arbitration.

Building Contract, 6/29/94, at 3 (emphasis added).

█ Our interpretation of the arbitration provision as a whole and, in particular, the highlighted portions above, convinces us that the parties intended to submit all of their grievances to arbitration, regardless of whether the claims sounded in tort or contract. There is no limiting language of the type that would lead one to believe that only contract claims fall within the purview of the agreement. Indeed, given the agreement's expansive terms, the only reasonable conclusion is that a claim's substance, not its styling, is to control whether the complaining party must proceed to arbitration or may file in the court of common pleas. That is, if the claim arises out of, or relates to, the building contract or the purported breach thereof, the moving party's sole forum is compulsory arbitration.

After reviewing identical contractual language, this same result was reached by our Supreme Court in *Borough of Ambridge Water Authority v. Columbia,* 458 Pa. 546, 328 A.2d 498 (1974). As in the instant matter, the arbitration clause at issue provided, *inter alia,* that "any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration." *Id.* at 547, 328 A.2d at 499. In affirming the trial court's dismissal of the Bor-

ough's complaint, our Supreme Court held as follows:

> [The arbitration agreement] is framed in the broadest conceivable language from which it must be concluded that the parties intended the scope of the submission to be unlimited. Where, as here, there is an unlimited arbitration clause, any dispute which may arise between the parties concerning the principle contract is to be settled pursuant to its terms.

*Id.* at 551–52, 328 A.2d at 501 (emphasis added).

Having determined that all claims arising out of the parties' contract are subject to the mandatory arbitration provision, it follows that we must next determine whether the claims at issue actually arise out of the building contract or the breach thereof. In this regard, Owners aver that a recent decision from this Court supports their argument that "tort-based statutory claims are separate and distinct from claims arising from the parties' underlying contract, and that such claims must be litigated in court." Owners' Brief at 13. As the precedent cited by Owners is plainly distinguishable from the instant case, we find Owners' reliance thereon misplaced.

In *Nealy v. State Farm Mut. Auto. Ins. Co.*, 695 A.2d 790 (Pa.Super.1997), this Court addressed the question of whether "bad faith claims raised pursuant to 42 Pa.C.S.A. section 8371 must be litigated in the courts and not before arbitration panels." *Id.* at 792. Factually, Nealy involved a situation in which, after the death of their son in a motor vehicle accident and the insurance company's refusal to pay benefits therefor, the appellants commenced suit against State Farm in the Court of Common Pleas of Cumberland County. Asserting that their claim fell within a mandatory arbitration provision in their insurance policy, the trial court granted the appellants' request for arbitration and the matter proceeded accordingly.

Four issues were then submitted to the arbitration panel, one of which questioned whether State Farm acted in bad faith in refusing to honor the appellants' initial claim. The arbitrators held that they were without jurisdiction to entertain the claim and, thus, refused to allow presentation of testimony or evidence on the issue.

Upon review, this Court held that, due to the unique nature of section 8371 bad faith claims, original jurisdiction thereover lies solely in our courts of common pleas. In explaining our rationale, we noted that, because the behavior giving rise to such causes of action occur after the behavior originally complained of, bad faith claims "are distinct from the underlying contractual insurance claims from which the dispute arose." *Id.* at 792. More specifically, we elaborated as follows:

> A § 8371 bad faith claim, however, is initiated based upon behavior of the insurance company occurring subsequent to the negligent or intentional behavior of a third party that spawned the contractual suit. Thus, because **the behavior complained of is temporally and factually distinct** from any behavior that would impact upon the outcome of the damages and liability disposition of the contract claim, we see no reason to expand upon the panels' jurisdiction.

*Id.* at 794 (emphasis added).

In the instant matter, Owners argue that their "claims for intentional misrepresentations and violations of the Unfair Trade Practices and Consumer Protection Law are temporally and factually distinct from [their] breach of contract claim." Owners' Brief at 14. This contention is wholly unsupported by the factual averments pled by Owners in their underlying complaint. Therein, Owners alleged that Builder failed to construct their home in accordance with its oral promises and the specifications in the written contract. In support thereof, Owners outlined a plethora of alleged defects in their home, which rendered the house unfit. In summation, Owners argued that "as a result of [Builder's] misrepresentations, use of construction methods and materials of significantly lesser quality than those promised, and refusal to honor the provisions of its warranty, [Owners] have suffered significant damages." Complaint, 3/20/97, at 10.

It is, therefore, plain that the same factual averments underlie both Owners' tort

and breach of contract claims. Additionally, the claimed misrepresentations and unfair trade practices allegedly occurred before, during and after Builder's construction. Again, this is the same time period at issue in Owners' parallel breach of contract arbitration action. In short, there is no credible support for Owners' averment that their tort claims are "temporally and factually distinct" from their breach of contract claims. We, therefore, hold that Owners' interpretation of our holding in *Nealy* is overly expansive and does not compel the same result.

In sum, we hold that the parties' agreement mandates that all disputes arising out of the contract or the breach thereof be submitted to compulsory arbitration, without regard to whether the claims sound in tort or contract. Further, we find that the underlying tort claims at issue arise out of the building contract or the alleged breach thereof. We, therefore, reverse the trial court's order denying Builder's preliminary objection in the nature of a motion to compel arbitration.

Order reversed. Case remanded to the Court of Common Pleas of Allegheny County with instructions to enter an order granting Christopher J. Kaclik, Inc.'s motion to compel arbitration and dismissing Richard and Shirley Shadduck's complaint. Jurisdiction is relinquished.