J-A20031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SELECTDECKS, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PITTSBURGH STONE & | : | |
| WATERSCAPES, LLC | : | |
| | : | No. 243 WDA 2021 |
| Appellant | : | |

Appeal from the Order Entered January 21, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-20-010170

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:            **FILED: OCTOBER 20, 2021**

Pittsburgh Stone & Waterscapes, LLC (Appellant), appeals from the order entered in the Allegheny County Court of Common Pleas, overruling its preliminary objections seeking to compel arbitration of the claims in a civil suit filed by SelectDecks, LLC (Appellee).[1]  On appeal, Appellant contends the trial court erred or abused its discretion in overruling its preliminary objections when an enforceable arbitration agreement exists between the parties and Appellee's claims fall within the scope of that agreement.   Because we

---

[1] "An order overruling preliminary objections seeking to compel arbitration is immediately appealable as an interlocutory appeal as of right pursuant to 42 Pa.C.S.[ ] § 7320(a) and Pa.R.A.P. 311(a)(8)."  ***Petersen v. Kindred Healthcare, Inc.***, 155 A.3d 641, 644 n.1 (Pa. Super. 2017).  ***See also*** 42 Pa.C.S. § 7320(a)(1) (appeal may be taken from order denying application to compel arbitration); Pa.R.A.P. 311(a)(8) (interlocutory appeal as of right may be taken from order made final or appealable by statute).

conclude some of Appellee's claims are subject to the parties' arbitration agreement, but others are not, we reverse in part and affirm in part.

The relevant facts underlying Appellee's claims, as gleaned from its complaint, are as follows. Appellant is a landscape and hardscape contractor, which was hired by Gina and Jeff Liberati to remodel a deck on their home in Sewickley, Pennsylvania. Appellee's Complaint, 9/24/20, at 1 (unpaginated). Appellee is a custom deck builder and a vendor for the Trex/Rain Escape decking system.[2] *Id.* at 1-2. On March 19, 2020, Appellant, as general contractor, entered into a contract with Appellee, as subcontractor, to remodel a deck at the Liberati home for the amount of $81,474.00.[3] *Id.* at 2. The agreement provided for payment in installments as the work was completed. Appellee's Complaint, Exhibit A, Subcontractor Agreement, 3/19/20, at 2 (Subcontractor Agreement). Relevant to this appeal, the agreement also included the following arbitration clause:

> ARBITRATION:
>
> Any dispute arising from the performance or non-performance of this agreement shall be resolved at the request of either party through binding arbitration and judgment on the award may be entered in any court having jurisdiction thereof. The prevailing

---

[2] Appellee describes itself as a "featured contractor of Trex products," while Appellant describes Appellee as a "preferred installer" for Trex. *See* Appellee's Brief at 12; Appellant's Brief at 15.

[3] Appellant explains that "Appellee was tasked with installing an underdeck waterproofing system so that Appellant's customer could make use of the underside of the deck without concern of water infiltration." Appellant's Brief at 14.

> party in any arbitration concerning this Subcontractor Agreement shall be entitled to reasonable attorneys' fees.

Subcontractor Agreement at 3.

In accordance with the Subcontractor Agreement, Appellee began demolition on the Liberatis' existing deck on March 24, 2020. Appellee's Complaint at 2. During the course of the construction, the Liberatis requested several changes which, Appellee avers, "alter[ed] the deck-board layout [and] caused [ ] leaks." *Id.* at 4. On July 9, 2020, Appellant's project manager instructed Appellee to stop working on the project and "anticipatorily repudiated the Contract" without tendering full payment. *Id.* at 5.

On September 24, 2020, Appellee filed a civil complaint against Appellant, asserting claims of breach of contract, unjust enrichment, intentional interference with existing and prospective contracts, and injurious falsehood. The breach of contract and unjust enrichment claims allege Appellee completed the deck remodel, but Appellant failed to tender the full contact price.[4] *See* Appellee's Complaint at 6-8, 10-11. Appellee's tort claims allege that Appellant "intentionally and improperly interfered with" its business relationship with Trex/Rain Escape, by "impugn[ing] and slander[ing Appellee's] credibility and good name" to Trex/Rain Escape, as well as to Appellee's existing customers. *Id.* at 8-9. Appellee further alleged Appellant

---

[4] Appellee averred Appellant still owed it $44,432.25 under the contract. Appellee's Complaint at 5.

told Trex/Rain Escape that Appellee "built and installed a majorly defective deck for the Liberati family," a statement it knew was false. ***Id.*** at 11.

On October 21, 2020, Appellant filed preliminary objections asserting Appellee's claims are subject to the arbitration clause in the Subcontractor Agreement. ***See*** Appellant's Preliminary Objections to Appellee's Complaint, 10/21/20, at 2 (unpaginated). Thus, Appellant requested the trial court dismiss Appellee's complaint. ***Id.*** at 3. Appellee filed a response the next day asserting the tort claims are outside the scope of the parties' Subcontractor Agreement, and, thereby not subject to the arbitration clause. ***See*** Appellee's Response and Brief in Opposition to Appellant's Preliminary Objections, 10/22/20, at 4 (unpaginated). On January 21, 2021, the trial court entered the underlying order overruling Appellant's preliminary objections, and directing it to file an answer to the complaint within 30 days. ***See*** Order, 1/21/21. This timely appeal followed.[5]

Appellant presents one issue on appeal:

Did the [t]rial [c]ourt abuse its discretion and/or err as a matter of law when it failed to consider, let alone apply, the liberal policy favoring arbitration agreements under the Federal Arbitration Act and Pennsylvania Law and overruled [Appellant's] preliminary objections seeking to compel arbitration, when there exists a valid enforceable agreement to arbitrate between both [Appellee] and [Appellant] and that the dispute involved is within the scope of the arbitration provision[?]

Appellant's Brief at 4.

---

[5] Appellant subsequently complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

- 4 -

Appellant's sole claim on appeal challenges the trial court's order overruling its preliminary objections in the nature of a petition to compel arbitration. Our standard of review is well-established: We are "limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." **Griest v. Griest**, 183 A.3d 1015, 1022 (Pa. Super. 2018) (citation omitted). Moreover:

> Where a party to a civil action seeks to compel arbitration, a two-part test is employed. First, the trial court must establish if a valid agreement to arbitrate exists between the parties. Second, if the trial court determines such an agreement exists, it must then ascertain if the dispute involved is within the scope of the arbitration provision. If a valid arbitration agreement exists between the parties, and the plaintiff's claim is within the scope of the agreement, the controversy must be submitted to arbitration.

**Provenzano v. Ohio Valley Gen. Hosp.**, 121 A.3d 1085, 1094 (Pa. Super. 2015) (citation omitted).

First, there appears to be no real dispute that a valid arbitration agreement exists between the parties. Although Appellee questioned the enforceability of the agreement in its complaint,[6] it did not repeat that claim

---

[6] Specifically, Appellee asserted: "[T]he 'binding arbitration clause' . . . of the Contract[ ] is unenforceable under Pennsylvania law, specifically pursuant to the **Batoff** case, as the scope of the agreement and its ramifications to [Appellee], including the potential to waive its right to a jury, were not explained in writing, or orally, to [Appellee]." Appellee's Complaint at 8. Appellee provided no citation to the **Batoff** case in its complaint, nor did it challenge the enforceability of the arbitration clause in its brief.

in either its response to Appellant's preliminary objections, or in its brief to this Court on appeal. Rather, Appellee asserts that it "does not dispute [the validity of the arbitration agreement] insofar as the scope extends only to the performance or non-performance of the contract[,]" and notes that the "breach of contract and unjust enrichment claims . . . may very well end up being litigated in the forum of binding arbitration[;]" however, it contests "the validity of the arbitration agreement for the tort counts." *See* Appellee's Brief at 14-15; Appellee's Response and Brief in Opposition to Appellant's Preliminary Objections at 2. Thus, we proceed to the second part of the test: whether Appellee's tort claims fall within the scope of the agreement. *See Provenzano*, 121 A.3d at 1094.

The determination of whether a claim falls within the scope of an arbitration agreement is a matter of contract interpretation and, thus, a question of law; our review of the trial court's decision is plenary. *Fellerman v. PECO Energy Co.*, 159 A.3d 22, 26 (Pa. Super. 2017) (citation omitted). When considering the scope of a contractual agreement to arbitrate, we are guided by the following:

> (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.
>
> To resolve this tension, courts should apply the rules of contractual constructions, adopting an interpretation that gives paramount importance to the intent of the parties and ascribes

the most reasonable, probable, and natural conduct to the parties. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement.

*Provenzano*, 121 A.3d at 1095 (citation omitted). Furthermore, when the language of the agreement to arbitrate claims is broad and unlimited, "the parties must resolve their dispute through arbitration." *Fellerman*, 159 A.3d at 30 (citation omitted).

An agreement to arbitrate disputes arising from a contract encompasses tort claims where the facts which support a tort action also support a breach of contract action. A claim's substance, not its styling, controls whether the complaining party must proceed to arbitration or may file in the court of common pleas.

*Id.* (citation omitted). With this background in mind, we consider Appellant's argument on appeal.

Appellant insists Appellee's tort claims fall under the parties' broad arbitration agreement, which provides that either party may request binding arbitration for "[**a**]**ny dispute** . . . arising from the performance or non-performance of [the] agreement." Appellant's Brief at 8. Relying on *Shadduck v. Christopher Kaclik, Inc.*, 713 A.2d 635 (Pa. Super. 1998), Appellant asserts that when "the factual averments of the tort claims underlie the breach of contact claims, the claims [are] not temporally or factually distinct and[, therefore, are all] covered by the arbitration agreement." Appellant's Brief at 12.

Here, Appellant maintains Appellee's "tort claims emanate from and are . . . inextricably intertwined with the contract action[.]" Appellant's Brief at

- 7 -

16. It explains that, pursuant to the parties' agreement, Appellee "was tasked with installing an underdeck waterproofing system so that [the homeowners] could make use of the underside of the deck without concern of water infiltration." *Id.* at 14. However, when Appellee "could not and or would not install the materials to prevent water infiltration[,]" Appellant "reached out to the product manufacturer, [Trex/Rain Escape, and] explained that its preferred installer was not properly installing the product[.]" *Id.* at 14-15. Appellant also maintains that a neighbor of the homeowners "stopped by to speak with Appellant about the project as she had a project that Appellee had installed at her home and that she was dissatisfied." *Id.* at 15. Accordingly, Appellant insists, the "tort claims emanate from and are so inextricably intertwined with the contract action that to bifurcate or remand back to the [trial court] would be contrary to the purpose of the arbitration clause." *Id.* at 16. It also contends Appellee included the injurious falsehood count only to "subvert the arbitration clause[.]" *Id.* Thus, Appellant asserts the trial court erred when it overruled its preliminary objections.

In support of its ruling, the trial court opined:

[Appellee's] claims of tortious conduct by [Appellant] involve statements that [Appellant] allegedly made to third parties in an effort to harm [Appellee's] reputation and future finances. The parties' dispute about whether [Appellant] engaged in this alleged tortious conduct is not a dispute about the performance or non-performance of the contract. [Appellant's] alleged tortious statements that were made to harm [Appellee's] reputation and business relationships with third parties are not "so inextricably intertwined" with the contract that litigation about those tortious statements must be arbitrated. *See Griest*[, 183 A.3d at 1024].

Trial Ct. Op., 4/20/21, at 3.

We agree with the trial court's ruling. The parties' broad arbitration clause — which applies to "any dispute arising from the performance or non-performance of" the Subcontractor Agreement — simply does not encompass Appellee's tort claims arising from allegedly **false statements** Appellant made to **third parties** regarding Appellee. **See** Subcontractor Agreement at 3.

Appellant's reliance on **Shadduck** misplaced. **Shadduck** involved a building contract for a residence between the builder and homeowners. **See Shadduck**, 713 A.2d at 636. The contract contained an arbitration clause, whereby the parties agreed that "all claims or disputes . . . arising out of, or relating to, [the c]ontract or the breach thereof shall be decided by arbitration[.]" **Id.** at 637 (citation and emphasis omitted). After construction of the home, the homeowners filed a civil complaint against the builder, asserting claims of fraudulent misrepresentation and violations of the Unfair Trade Practices and Consumer Protection Law (UTPCPL). **Id.** at 636. Specifically, they alleged:

> [The b]uilder made false representations regarding its ability, or willingness, to construct [the] home in a workmanlike fashion[ and . . . engaged in unfair and deceptive trade practice before, during and after the construction of their house. . . .

**Id.** The homeowners filed a separate demand for arbitration for a claim that the builder breached the terms of the parties' contract. **Id.** Subsequently, in the civil action, the builder filed preliminary objections in the nature of a

motion to compel arbitration of all the claims pursuant to the arbitration agreement. **See id.** The trial court overruled the preliminary objections. **Id.**

On appeal, we reversed the order, and remanded the case to the trial court with instructions to grant the builder's motion to compel arbitration and dismiss the complaint. **See Shadduck**, 713 A.2d at 639. The **Shadduck** Court first determined that, based on the broad language of the parties' arbitration clause, "the parties intended to submit all of their grievances to arbitration, regardless of whether the claims sounded in tort or contract." **Id.** at 637. Thus, "if the claim [arose] out of, or relate[d] to, the building contract or the purported breach thereof, the moving party's sole forum [was] compulsory arbitration." **Id.**

Next, the **Shadduck** Court concluded that "the underlying tort claims at issue [arose] out of the building contract or the alleged breach thereof." **Shadduck**, 713 A.2d at 639. The panel explained:

> [The homeowners] alleged that [the b]uilder failed to construct their home in accordance with its oral promises and the specifications in the written contract. In support thereof, [they] outlined a plethora of alleged defects in their home, which rendered the house unfit. In summation, [the homeowners] argued that "as a result of [the builder's] misrepresentations, use of construction methods and materials of significantly lesser quality than those promised, and refusal to honor the provisions of its warranty, [they] have suffered significant damages."
>
> It is, therefore, plain that the same factual averments underlie both [the homeowners'] tort and breach of contract claims. Additionally, the claimed misrepresentations and unfair trade practices allegedly occurred before, during and after [the builder's] construction. Again, this is the same time period at issue in [the] parallel breach of contract arbitration action. In short, there is no credible support for [the homeowners']

- 10 -

averment that their tort claims are "temporally and factually distinct" from their breach of contract claims.

*Id.* at 638–39.

In the present case, Appellant insists the arbitration agreement at issue is "even broader" than the one in **Shadduck**, and "encompass[es] any and all claims arising from the performance or non-performance" of the Subcontractor Agreement. **See** Appellant's Brief at 15, 17. Further, Appellant disputes Appellee's argument that the tort claims are not subject to arbitration because they arose "well after the Contract had been negotiated and signed." **See id.** at 16 (pursuant to this line of reasoning "no matters arising after the execution of a contract containing an arbitration clause would be subject to arbitration."). Rather, Appellant argues the tort claims "are so rooted in the contract (or non-performance of) that they can be reasonably expected to be arbitrated." **Id.** We disagree.

Here, Appellee's tort claims arise from statements Appellant allegedly made to third parties after Appellee purportedly failed to perform under the terms of the contract. We do not agree that this is the type of claim the parties intended to submit to arbitration when they executed the Subcontractor Agreement. **See Provenzano**, 121 A.3d at 1095. Although Appellee's performance or non-performance under the contract is relevant to the tort claims,[7] Appellee's assertion — that Appellant made false statements

_____

[7] The truth of the underlying statement — *i.e.*, that Appellee did not construct the deck in a workmanlike manner — defeats a claim for both interference

- 11 -

about Appellee's workmanship to its vendor and clients in an effort to harm their relationship — is "temporally and factually" distinct from the breach of contact and unjust enrichment claims. *See Shadduck*, 713 A.2d at 639. Indeed, the tort claims did not arise until **after** Appellee, allegedly, breached the terms of the parties' agreement, and is not a dispute "arising from [Appellee's] performance or non-performance" of the Subcontractor Agreement. *See* Subcontractor Agreement at 3. When this Court has determined that tort claims did fall within the scope of the parties' arbitration agreement, those claims were dependent upon the parties' contract terms. *See Fellerman*, 159 A.3d at 25, 30 (homeowner's tort claims asserting negligent misrepresentation and fraud against home inspection company, which failed to discover or disclose deteriorated utility pole on property before it fell and injured homeowner, was subject to parties' arbitration agreement; homeowner alleged that they "sustained injuries as a result of [home inspection company's] failure to disclose certain information regarding the power pole, in breach of its obligation under the contact"); *Dodds v. Pulte Home Corp.*, 909 A.2d 348, 350-51 (Pa. Super. 2006) (homebuyers' claims of common law fraud and fraudulent inducement to enter purchase agreement

---

with contractual relations and injurious falsehood. *See Walnut Street Assoc., Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 478-79 (Pa. 2011) ("[T]he conveyance of truthful information cannot reasonably be deemed to be 'improper' interference" with contractual relations); *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002) (a claim of injurious falsehood requires proof that, *inter alia*, "the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity").

were subject to contractual arbitration clause in purchase agreement; claims that the home was not built properly, and "builder knew it would not build the home[ ] as promised" related to purchase agreement); ***Warwick Tp. Water and Sewer Auth. v. Boucher & James, Inc.***, 851 A.2d 953, 954-55, 958 (Pa. Super. 2004) (water authority's negligence claim against subcontractor, which built defective water tanks, fell within parties' arbitration clause; negligence claim was based on subcontractor's failure "to act with reasonable care 'in carrying out [its] duties on the Project'" and thus involved the same factual averments as breach of contract claim); ***Shadduck***, 713 A.2d at 638-39 (homeowners' claims of fraudulent misrepresentation and violations of UTPCPL fell within arbitration clause of building contract; homeowners alleged builder misrepresented quality of work and materials at time of contract).

We are required to "strictly construe[ ]" arbitration agreements and not extend them by implication.  ***See Provenzano***, 121 A.3d at 1095 (citation omitted).  Thus, we conclude the trial court properly determined Appellee's tort claims were not subject to the parties' arbitration clause.  Accordingly, we affirm the portion of the order overruling Appellant's preliminary objections with respect to the tort claims.

Nevertheless, it appears both parties agree that Appellee's claims for breach of contract and unjust enrichment fall within the arbitration clause, as they represent disputes "arising from [Appellee's] non-performance" of the Subcontractor Agreement.  ***See*** Subcontractor Agreement at 3.  Because we agree Appellee's contract claims are subject to the parties' arbitration

- 13 -

agreement, and Appellant requested these claims be arbitrated, we reverse the trial court's order insofar as it denied the preliminary objections with regard to Counts I (breach of contract) and III (unjust enrichment) of Appellee's complaint. *See Midomo Co., Inc. v. Presbyterian Housing Dev. Co.*, 739 A.2d 180, 191 (Pa. Super. 1999) (affirming in part and reversing in part trial court's order overruling preliminary objections in nature of petition to compel arbitration; arbitration clause in contract concerning development of one property did not extend to claims regarding development of second property, and thus, claims regarding to second property were not subject to binding arbitration).

Order affirmed in part and reversed in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2021